In re ESTATE OF LYLE J. BONNETT, Deceased.—(HARRY KUHL et al., Petitioners-Appellants, v. YVONNE BUELOW et al., Respondents-Appellees.)

Second District   No. 76-323

Opinion filed September 6, 1977.

Michael Stapleton, of Stapleton, Ernst & Sprengelmeyer, of East Dubuque, for appellants.

Robert R. Roth, of Roth & Elliott, of Galena, for appellees.

Mr. PRESIDING JUSTICE RECHENMACHER delivered the opinion of the court:

This is an appeal from the order of the circuit court of Jo Daviess County fixing fees for services performed by the appellants as executor and as attorney for the estate of Lyle J. Bonnett, deceased.

Harry Kuhl, is executor under the will of Lyle J. Bonnett, and Michael A. Stapleton acted as attorney in the administration of the estate. The court allowed Kuhl $5,500 for his services as executor and Stapleton $6,500 for his legal fees. Stapleton in this appeal claims his services were worth approximately $10,200 and Kuhl claims he should have received about $6,900 as fair remuneration.

The decedent owned a business which was split into two operations—the Frentress Lake Marine Center, which serviced and repaired boats, and the Lyle Bonnett Marina, which provided docks, slips, etc. for docking and storing boats. The estate, including real estate valued at $12,000 in Iowa, was valued at a little over $126,000. An appraisal of the business itself found its value to be approximately $48,230 for the Marine Center and $50,450 for the Marina operation, but the Marine Center owed $9,200 to the East Dubuque Savings Bank.

Upon the death of Lyle J. Bonnett, his heirs thought it best to try to sell the two operations as a unit. There were several difficulties in doing so, however, one of which was that Lyle J. Bonnett did not own the land on which the business was located—it was leased to him by Arthur Gill, who in turn leased this site from the United States Department of the Interior. The duration of Gill's lease was uncertain, depending upon the

Department's decision whether or not to renew it. There was no right of renewal in the leases from the Department, however, there was no testimony in the record suggesting that the leases would not be renewed.

The initial attempt to sell the business fell through. In addition to purely financial considerations and the nature of the leasehold interest, etc., the negotiations were hampered by windstorm damage which occurred between the death of Bonnett and the opening of the estate, which damage was followed a week or so later by a fire which further damaged the facilities. The fire and windstorm damage was not repaired promptly, but whether this was due to the inertia of the agent, the procrastination of the insurance adjuster, or some technical question based on the nature of the damage, is not clear.

After some delay the fire and windstorm damage was satisfactorily adjusted and the negotiations for the sale of the business continued. After some further difficulties, the business was sold as a unit to a buyer suggested by Mr. Gill.

In support of his claim of $3,820 for extraordinary compensation above the customary fee based on the gross estate, attorney Stapleton made much of the satisfactory settlement achieved in the insurance claims and the difficulties he had to overcome in selling the business for a figure around the appraised value. He calculated his extraordinary time in achieving these results as being worth $3,820 in addition to $6,340 for ordinary services, based on 5% of the gross value of the estate. Exactly what the number of hours or the charge per hour was in this calculation of extraordinary time is difficult to determine. In his application for attorney fees Stapleton stated that his extraordinary time amounted to 67.2 hours, but in his actual testimony he referred to 74.2 hours of extraordinary time. However, the $3,820 he claims apparently represents 76.4 hours, if valued at $50 per hour. Attorney Stapleton testified he justified this figure on the basis of the "results obtained," apparently referring to the insurance settlement and the satisfactory sale of the business.

The executor, Mr. Kuhl, testified that he also spent extraordinary time in performing his duties for the estate, however, he did not itemize the hours he spent and it appears his claim is based on what he said was the customary fee of 6% of the estate, that is, 6% of approximately $115,000 (excluding the Iowa property worth $12,000), or $6,900.

Two practicing attorneys testified on behalf of Kuhl and Stapleton. Both attorneys testified that they based the fees for the executor, Kuhl, on 6% of the gross estate, excluding the Iowa property, which produced a fee of $6,900. Attorney Nagel estimated the value of Stapleton's services at $9,000 and attorney Nack figured Stapleton's services to be worth $9,200. On the Federal Estate Tax return attorney Stapleton had estimated fees at $6,000 each for himself and Kuhl. The heirs had approved this charge.

Both the extent and the value of attorney Stapleton's extraordinary efforts on behalf of the estate were disputed by the heirs. Yvonne Buelow, the decedent's daughter, testified that as to the insurance claim, Mr. Stapleton had very little to do with getting it settled; that apparently the claim had not been pressed by anyone until the insurance agent himself—who owned a boat and was being inconvenienced by the failure to make repairs to the dock facilities—complained to her—Yvonne Buelow—about the delay. She testified that when she explained to him that nothing was being done to adjust the claim, the agent, Mr. Butler, got the adjuster over to the scene right away and both claims were quickly settled without any difficulty. According to the testimony of Yvonne Buelow, attorney Stapleton's intervention was not required to settle the insurance claims on an equitable basis, since there was no argument or disagreement as to the amount to be recovered and Mr. Stapleton had not been hired on a contingent basis or otherwise to represent the heirs in connection with the insurance claims.

As to the sale of the business, here again, the detailed testimony of Yvonne Buelow refuted attorney Stapleton's claim to have been responsible for an advantageous result. She testified that it was actually Art Gill, the lessee of the land from the Department of the Interior, who brought about the sale to Petitgout. There appears to be a direct conflict between Stapleton's claim that the sale to Petitgout was effected through his efforts with Petitgout and Kuhl's efforts with Art Gill, and Mrs. Buelow's testimony indicating that the main effort was that of Gill in persuading Petitgout and assisting him to obtain financing. She said: "Mr. Gill is the one that helped us out of the whole thing and he is the one that has spent the hours and the time."

■■ There was, therefore, conflicting testimony on the question of the extraordinary services performed by attorney Stapleton, which conflict the trial court had the right and the duty to resolve, within the limits of a reasonable discretion.

Attorney Stapleton contends in this appeal that the trial court acted arbitrarily in setting the fees at $6,500 for him and $5,500 for Kuhl, inasmuch as the expert testimony indicated much higher fees to be proper. He suggests that the trial court merely rearranged the apportionment of the estimated fees as shown on the Federal estate tax return and this was arbitrary and an abuse of discretion.

We do not agree. There is no evidence from which to conclude that the award of the court was based on anything other than the reasonable value of the services rendered by the attorney and the executor, as viewed by the trial court. Discounting the extraordinary services claimed by attorney Stapleton, which the court could reasonably have done in view of Mrs. Buelow's countervailing testimony, and the lack of agreement between

the attorneys as to the basis for the fee,[1] we see no reason to regard the fee awarded by the trial court as arbitrary and unreasonable. Attorney Stapleton's claim for the estate work, which he does not designate as extraordinary, was evidently based on 5% of the gross estate, or $6,340. Attorney Nagel calculated the "basic" fee on a graduated percentage basis at $4,150, plus $600 for the Iowa property, or $4,750. In obtaining the $4,250 of extraordinary fees to arrive at a total of $9,000, attorney Nagel considered the insurance recovery and the sale of the business as being extraordinary, but reasonable men may certainly differ as to how extraordinary it was for the executor and his attorney to make the necessary effort to accomplish these transactions. Apparently the court did not consider such activities as being extraordinary to the degree that they should not only be charged for separately, but also at a higher charge per hour.

It does not appear from the record before us that the court was hurried or careless in its appraisal of what the respective efforts of the executor and the attorney were worth, as contended by attorney Stapleton. The trial judge remarked before giving his decision that he had had "lots of time to think" and that this was an area he was familiar with. From the lack of any actual evidence to the contrary, we must assume that the insurance claims which were pending when the estate was opened were not initially denied or resisted by the insurance company so that the collection of the amount arrived at need not have involved the attorney at all, except to approve the form of the release.

As to the business properties, the assistance of Arthur Gill was apparently the key element in arranging a sale and we do not gather from any evidence other than Mr. Stapleton's own argument that the sale at the appraised figure was due to an extraordinary effort by the attorney or the executor. It would seem that Mr. Gill was the moving force behind the negotiations, as Mrs. Buelow testified, since he held the lease from the Department of the Interior and his acceptance of the buyer was necessary. However, we see no reason to suppose that the efforts Mr. Gill expended in arranging the sale were due to the intervention of attorney Stapleton or Mr. Kuhl, inasmuch as Mr. Gill had been friendly with the decedent and his family before Stapleton came on the scene—he was

---

[1] The fees were variously calculated as follows:

| Stapleton | Basic Fee | $6340 | |
| | Extraordinary | 3820 | $10,160. |
| Nagel | Basic Fee | 4750 | |
| | Extraordinary | 4250 | 9,000. |
| Nack | 230 hours at | | |
| | $40 per hour | | 9,200. (no breakdown as to extraordinary fees.) |

referred to by Mrs. Buelow as a "friend." In any event, his own self-interest was obviously involved in effecting a sale of the business so that it would continue on a basis satisfactory to him. As we understand the facts, the sale was finally consummated to a Mr. Petitgout, who already had acquired an interest in the business and was able to purchase the remaining interest through a loan which Mr. Gill helped to arrange. On the basis of these facts we do not believe attorney Stapleton was entitled to substantial extraordinary fees for the sale of the business.

■■ To sum up, while attorney Stapleton in his reply brief disputes the testimony of Mrs. Buelow, as to the degree and importance of his efforts in connection with both the insurance claims and the sale of the business, he does not demonstrate that his own involvement was the key to the satisfactory conclusion of either transaction. Moreover, even if his intervention was important we are not required to assume that it was so far beyond what could be expected of the attorney for the estate as to merit a separate additional fee of $3,820. Therefore, we do not believe that attorney Stapleton was entitled to extraordinary fees as part of the "reasonable compensation" authorized by the statute. Ill. Rev. Stat. 1975, ch. 3, par. 337.

The claim of Mr. Kuhl is obviously based on 6% of the gross estate. The statute covering executor's fees, section 336 of the Probate Act (Ill. Rev. Stat. 1975, ch. 3, par. 336), provides only that the executor be entitled to "reasonable compensation for his services." The evidence at the hearing to fix fees did not develop, in our opinion, any unusual facts or problems which would entitle the executor to extraordinary compensation. We see no reason to allow more than the amount fixed by the court merely because it falls short of the 6% of the gross estate, which may have been awarded in the past in some cases. While in the past some sanction has been given by local custom to a percentage fee based on the gross amount of the estate, that has no legal basis, and since *Goldfarb v. Virginia State Bar* (1975), 421 U.S. 773, 44 L. Ed. 2d 572, 95 S. Ct. 2004, it has not been an acceptable standard. As the trial court remarked in announcing his ruling: "The reasonable fees are not concerned with percentage any more."

In determining the "reasonable compensation" to be allowed to the attorney and the executor of the estate, the trial court clearly has broad discretion. As was said by the court in *In re Estate of McCalmont* (1958), 16 Ill. App. 2d 246, 257:

> "And in matters of executor's etc. and attorney's fees in such estates the court is not necessarily bound by opinion testimony as to the amount to be allowed; it need not accept as conclusive, but should give due regard to the opinions of witnesses; it may and should take into consideration its own knowledge of and judgment as to the value of the services: * * *."

■■ ■ In this case, after a fair hearing, the trial court, taking into consideration its own knowledge and judgment of the value of the services, arrived at a figure of $6,500 for the attorney and $5,500 for the executor of the estate. Using the standard of the court in *In re Estate of Saperstein* (1974), 24 Ill. App. 3d 763, 775, in which it reiterated the familiar principle that the award of attorney's fees (in an estate case) "is peculiarly within the discretion of the trial court" and that a reviewing court will alter the trial court's finding only where the determination of the trial court is a "plain case of wrongful exercise of judgment" (*In re Estate of McCalmont* (1958), 16 Ill. App. 2d 246, 256), or is "manifestly or palpably erroneous" (*In re Estate of James* (1956), 10 Ill. App. 2d 232, 242), we find no abuse of discretion here.

The judgment of the circuit court of Jo Daviess County is affirmed.

Judgment affirmed.

SEIDENFELD and NASH, JJ., concur.